UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNIQUE DEVELOPMENT GROUP, LLC, § § *Plaintiff*, § § v. § § NORMANDY CAPITAL TRUST AND § COHEN FINANCIAL, § § *Defendants.* § | CIVIL ACTION 4:18-cv-04542 |

## DEFENDANTS' COUNTERCLAIM AND APPLICATION FOR APPOINTMENT OF RECEIVER

TO THE HONORABLE JUDGE OF SAID COURT:

Defendants Normandy Capital Trust ("Normandy") and Cohen Financial ("Cohen") (collectively "Defendants") file this Counterclaim and Application for Appointment of Receiver ("Counterclaim") against Plaintiff Unique Development Group, LLC ("Unique"), and respectfully shows the court as follows:

### NATURE OF ACTION

1. This is an action arising out of Unique's breach of the terms and provisions contained within the Note and Deed of Trust, further described *infra*, securing repayment of a commercial real estate loan in the original principal amount of $3,150,000.00, secured by 9 townhouses located at:

   1842 Colquitt Street, Houston, TX 77098;
   1844 Colquitt Street, Houston, TX 77098;
   1846 Colquitt Street, Houston, TX 77098;
   1848 Colquitt Street, Houston, TX 77098;
   4112 Driscoll Street, Houston, TX 77098;
   4114 Driscoll Street, Houston, TX 77098;
   4116 Driscoll Street, Houston, TX 77098;

4118 Driscoll Street, Houston, TX 77098; and,

4120 Driscoll Street, Houston, TX 77098 (collectively the "Property").

2. Defendants seek the appointment of a receiver to enter upon and take full control over the management and operations of the Property to preserve and maintain the Property pending possible disposition of the Property.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over Defendants' counterclaim because the citizenship of the parties is diverse and the amount in controversy exceeds $75,000.00.

4. Venue is proper in this district because the real property which is the subject of this litigation is located in Harris County, Texas.

## FACTS

5. Unique owns and operates the Property.

6. On July 20, 2017, Unique entered into a commercial real estate loan with A10 Capital, LLC as evidenced by a Commercial Promissory Note ("Note") in the original principal amount of $3,150,000.00. The Note was executed by Unique, by and through Jacqueline Salazar Lopez, Manager of Unique. A true and correct copy of the Note is attached hereto and incorporated herein as Exhibit 1.

7. As a part of that same transaction, and to secure repayment of the Note, Unique executed an Open-End Commercial Deed of Trust, Security Agreement, and Fixture Filing ("Deed of Trust") for the benefit of A10 Capital, LLC. The Deed of Trust was recorded on August 9, 2017 as Instrument No. RP-2017-358962 in the Official Public Records of Harris County, Texas. A true and correct copy of the Deed of Trust is attached hereto and incorporated herein as Exhibit 2.

8. As further security for the repayment of the Loan, Unique executed and delivered a Collateral Assignment of Leases and Rents ("Assignment of Rents") whereby Unique agreed to

Case No. 4:18-cv-04542; *Unique Development Group, LLC v. Normandy Capital Trust, et al*  
*Defendants' Counterclaim and Application for Appointment of Receiver*

TX-18-69436-DL  
Page 2 of 18

an absolute, unconditional, and present assignment of the leases and rents generated by the Property. A true and correct copy of the Assignment of Rents is attached hereto and incorporated herein as Exhibit 3. The Note, Deed of Trust, Assignment of Rents, and all other documents executed in connection therewith or relating in any way thereto are referred to individually or collectively as the "Loan Documents".

9. Normandy is the mortgagee of record and the party entitled to enforce the terms of the Loan pursuant to an assignment of the Deed of Trust which was recorded on November 9, 2017 as Instrument No. RP-2017-493904 in the Official Public Records of Harris County, Texas. A true and correct copy of said assignment is attached hereto and incorporated herein as Exhibit 4.

10. Cohen is the servicer responsible for the administration of the Loan.

11. Unique is in default under the Note and Deed of Trust having failed to comply with the terms of the Loan Documents, including, but not limited to: paying property taxes due and owing in 2018, 2019, and 2020 (Ex. 2 § 1.04.1), and failing to timely pay all amounts due and owing upon maturity of the Loan (Ex. 2 p. 1). Accordingly, Defendants believe there is an urgent need to protect the value of the Property from imminent danger of loss and diminished value through this Court's appointment of a receiver for the Property so that Defendants can provide the money necessary, in Defendants' reasonable and good faith discretion, to pay the necessary expenses associated with the operation of the Property, without becoming exposed to mortgagee-in-possession liability.

12. Pursuant to the Assignment of Rents, Unique absolutely and unconditionally assigned to Defendants all Leases and Rents (defined in the Loan Documents), and granted Defendants the sole, exclusive, and immediate right to demand, collect, and receive any and all Leases, Rents, and Profits, subject to a revocable license to Unique. However, upon the occurrence

of an event of default, Unique's license to collect Leases, Rents, and Profits is automatically terminated, and Defendants shall thereafter collect the Leases, Rents, and Profits itself or by agent or receiver under the terms of the Loan Documents.  *See* Ex. 3 § 6.

13.     Unique's failure to comply with the terms of the Loan Documents constitutes an "Event of Default".  *See* Ex. 1 § 3; Ex. 2 § 2.01.  Despite notice of default and demand to cure, Unique has failed and refused to make the necessary payments to cure its default within the prescribed time period.  As a result, Defendants have accelerated the maturity date of the Note and declared the indebtedness evidenced by the Loan Documents due and payable in full.  True and correct copies of the default and acceleration notices are attached hereto and incorporated herein as Exhibit 5.

14.     As of August 7, 2020, a principal balance of $3,150,000.00 remains outstanding.  In addition to the outstanding principal balance, interest, default interest, late fees, taxes, force placed insurance, and other sums remain outstanding as set forth under the terms of the Loan Documents.

15.     Pursuant to the Federal Rules of Civil Procedure, this Court has the power to appoint a receiver over the Property, and the appointment of a receiver to manage and operate the Property is just and necessary in this case, for the following reasons:

   a. Unique has consented to the appointment of a receiver in this matter (*see* Ex. 2 § 3.03);

   b. Normandy's primary collateral faces imminent danger of being lost, materially injured or diminished in value;

   c. Denying Defendants' request for appoint of a receiver would harm Defendants more than the appointment would injure Unique because without a receiver, the Property will continue to diminish in value, whereas the appointment of a receiver only deprives Unique of possession of the Property;

   d. Defendants have a vested interest in ensuring that the Property is properly maintained and repaired, and adequately insured;

Case No. 4:18-cv-04542; *Unique Development Group, LLC v. Normandy Capital Trust, et al*
Defendants' Counterclaim and Application for Appointment of Receiver

TX-18-69436-DL
Page 4 of 18

e. Defendants have a vested interest in ensuring the rent, income, and other profits generated by the Property are being properly used for the benefit of the Property and for the payment of debt service;

f. Defendants have a vested interest in reviewing the books and records maintained in connection with the Property;

g. Defendants have a vested interest in ensuring the ad valorem taxes on the Property are being paid, so as to prevent the possibility of property tax liens recorded after the recording of the Deed of Trust from obtaining priority over Normandy's lien on the Property[1];

h. Defendants have the current right to possession of the Property and to the Rents, Profits, and income generated therefrom, and it is preferable that a receiver, who is accountable to the Court and to the parties of interest, take possession rather than Defendants.

## FIRST COUNTERCLAIM: BREACH OF CONTRACT

16. For consideration, Unique covenanted and agreed in the Loan Documents to, for example, timely make all payments due and owing under the Note as and when due, and to pay property taxes as they became due and owing. Unique breached such promise to the detriment of Defendants. Despite all required notices, Unique remains in default on its obligations under the terms of the Loan.

17. As a direct and proximate result of Unique's default, Defendants have been injured (which injury is continuing). Accordingly Defendants are entitled to pursue all remedies available to it under the Loan Documents and at law and in equity to protect the value of Normandy's collateral and to collect all amounts due and owing under the terms of the Note, Deed of Trust, and the other Loan Documents, including, but not limited to, the outstanding principal balance, pre-payment premiums, interest, late charges, tax and insurance amounts, and attorneys' fees, costs, and expenses incurred by Defendants.

---

[1] Harris County has already instituted suit to foreclose one of its tax liens on the Property in Harris County District Court Cause No. 201953568.

Case No. 4:18-cv-04542; *Unique Development Group, LLC v. Normandy Capital Trust, et al*
*Defendants' Counterclaim and Application for Appointment of Receiver*

TX-18-69436-DL
Page 5 of 18

18. The following sums are now due and owing to Defendants as of August 31, 2020:

   a. <u>Unpaid Principal Balance</u>:  $3,150,000;

   b. <u>Interest</u>: $554,400.00, and is accruing currently at the Note rate of 8.0% per annum and will continue to accrue at the rate of $700.00 per diem;

   c. <u>Default Interest</u>: $1,197,000.00 and is accruing currently at the Note rate of 18.0% per annum and will continue to accrue at the rate of $1,575.00 per diem;

   d. <u>Other Amounts Due Under Terms of the Loan</u>:  Pursuant to the terms of the Loan, Plaintiff is entitled to judgment for the following additional recoverable amounts: amounts advanced for escrow, taxes, assessments, municipal and utility charges, late fees, loan fees, prior and current foreclosure expenses, property preservation or valuation expenses, insurance and repairs necessary to prevent impairment of the security, and other items which may constitute liens on the Property.  These amounts currently total $454,156.64;

   e. <u>Unapplied Funds</u>:  There is currently $100,000.00 being held that has not been applied to the balance of the amount due;

   f. As of the date of the preparation of this counterclaim, the amount due is $5,255,556.64.

19. Defendants request judgment against Unique for the total sum of principal, accrued and accruing interest, late charges and advances, and any other charges secured by the Loan.

20. Pursuant to the terms of the Loan Documents, Defendants also seek the appointment of a receiver for the Property due to Unique's default.  *See* Ex. 2 § 3.03.

## SECOND COUNTERCLAIM: FORECLOSURE OF LIEN

21. Normandy, as the current legal owner and holder of the Note and the mortgagee of the Deed of Trust, has the right to enforce the Loan Documents.  Defendants have fully performed their obligations under the Loan Documents, however, Unique has defaulted under the Loan Documents by failing to perform material obligations required therein.  Unique has not cured the default.

22. Defendants seek a judgment allowing them to foreclose on the Property, whether by selling the individual units separately, as a single combined lot, or any combination thereof, in

Case No. 4:18-cv-04542; *Unique Development Group, LLC v. Normandy Capital Trust, et al*
*Defendants' Counterclaim and Application for Appointment of Receiver*
TX-18-69436-DL
Page 6 of 18

accordance with the Loan Document and Texas Property Code § 51.002, or strictly in the alternative, through a judgment for judicial foreclosure instructing a marshal, constable, or sheriff to seize and sell the Property in satisfaction of the judgment, and a declaration of Defendants' right to the same.

23.     Defendants further request that the Court enter a judgment declaring that upon the completed foreclosure of the Deed of Trust, any interest Unique may have in the Property will have been foreclosed and extinguished.

## APPLICATION FOR APPOINTMENT OF RECEIVER

24.     Pursuant to Federal Rule of Civil Procedure 66, this Court has the power to appoint a receiver. The appointment of a receiver is within the sound discretion of the Court. *Santibanez v. Weir McMahon & Co.*, 105 F.3d 235, 241 (5th Cir. 1997). The decision to appoint a receiver in federal court based on diversity jurisdiction is governed by federal common law, not Texas law. *See D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broadcasting, Inc.*, 550 F.Supp.2d 481, 489 (S.D.N.Y. 2008); *New York Life Ins. Co. v. Watt West Inv. Corp.*, 755 F.Supp. 287, 291-92 (E.D. Cal. 1991). "The appointment of a receiver can be sought by anyone showing an interest in certain property or a relation to the property and control and ownership thereof such as to justify conservation of the property by a court officer." *Santibanez*, 105 F.3d at 241. It is well settled that "creditors with a security interest in real property have a well established interest in the property sufficient to support the appointment of a receiver." *Brill & Harrington Invs. v. Vernon S & L Ass'n*, 787 F. Supp. 250, 253 (D.D.C 1992). Further, no hearing is necessary where the facts set out in the application support the appointment of a receiver. *U.S. v. Berk & Berk*, 767 F.Supp. 593, 597 (D.N.J. 1991).

Case No. 4:18-cv-04542; *Unique Development Group, LLC v. Normandy Capital Trust, et al*
*Defendants' Counterclaim and Application for Appointment of Receiver*

TX-18-69436-DL
Page 7 of 18

25. Based upon Defendants' desire for a receiver and Unique's consent to the appointment of a receiver, Defendants request that the Court appoint a receiver to: (1) take possession and control of the Property (including, but not limited to) the actions described in § 6(a) of the Assignment of Rents; (2) preserve and maintain the Property; (3) preserve the ability of a future buyer of all or a portion of the Property to assume all or a portion of the Loan (with Defendants' consent). At this time Defendants do not have adequate information to determine whether its ultimate intention is to pursue foreclosure, seek a sale of the Property by the receiver, or secure a sale of the Note. Defendants seek the appointment of a receiver pending such foreclosure or other disposition of the Property to provide for the orderly transfer of the Property to a purchaser while providing for the uninterrupted care and upkeep of the Property. The appointment of a receiver facilitates subjecting the Property to Normandy's secured claim, pending an orderly disposition of the Property.

26. All parties who have an ownership interest in the Property have been joined in this action.

*Considerations for Appointment of Receiver*

27. Federal Rule of Civil Procedure 66 provides as follows:

These rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued. But the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule. An action in which a receiver has been appointed may be dismissed only by court order.

28. Factors considered by federal courts when determining the propriety of a receivership under Federal Rule of Civil Procedure 66 include:

    a. Fraudulent conduct on Plaintiff's part;

    b. Imminent danger of the property being lost, concealed, injured, diminished in value or squandered;

Case No. 4:18-cv-04542; *Unique Development Group, LLC v. Normandy Capital Trust, et al*  
*Defendants' Counterclaim and Application for Appointment of Receiver*

TX-18-69436-DL  
Page 8 of 18

   c. Inadequacy of legal remedies;

   d. Probability that harm to Defendants by denial of appointment would outweigh injury to parties opposing appointment;

   e. Defendants' probable success in the actions and the possibility of irreparable injury to Defendants' interest in the property; and,

   f. Whether Defendants' interest sought to be protected will in fact be well served by a receiver.

*Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316-17 (8th Cir. 1993); *New York Life Ins. Co.* 755 F.Supp. at 290, 292.  The contractual provisions in the Loan Documents are a factor the courts consider in deciding whether the appointment of a receiver is warranted.  *See D.B. Zwirn*, 550 F.Supp.2d at 491.  The courts have found this factor, and the borrower's mounting obligations, to be sufficient grounds to warrant appointment of a receiver pending final determination of the action.  *See id.* at 491-92; *Berk & Berk*, 767 F.Supp. at 597.

   29.   The Court can infer the imminent danger of loss from the fact the Loan has not been repaid because "debt service is always a priority expense item for prudent managers of encumbered income-producing properties." *Brill & Harrington Invs.*, 787 F.Supp. at 254.  Unique's failure to service the mortgage debt calls into question its ability to manage and protect the value of the Property.  Because an event of default exists under the Loan Documents, Borrower's ability to collect and receive rents and profits has been revoked.  Defendants have the sole, exclusive, and immediate right to collect and receive rents, profits, and other income from the Property.  Thus, imposition of a receivership over the Property will not expose Unique to any harm.  Furthermore, the Court will retain jurisdiction, and will always act to implement, and to protect the integrity of, the receivership and the *res*.  *Id.* at 255.

   30.   The Property has been vacant and unoccupied for nearly 2 years.  In their current empty status, the properties are in danger of being ransacked and having all valuable fixtures and

wiring stolen. Furthermore, in addition to being in various states of disrepair, each individual unit has some level of interior water damage due to poor roof construction which has not been addressed at any point in the last 2 years. Instead of taking any action to protect Plaintiff's investment and Defendants' collateral, the Property has been left to languish and fall into further disrepair.

31. In addition to taking no action with regard to the physical status of the Property in the last two years, Plaintiff has also failed to pay *ad valorem* property taxes accruing on the Property for 2018 and 2019. This failure led to Harris County filing suit to foreclose on said taxes in Harris County Cause No. 2019-53568, which is still pending. With no hope in sight of Plaintiff paying the tax bill, divesting their ownership of the Property, or attempting to generate even a modicum of income, Defendants are preparing to pay the nearly $500,000.00 tax bill in order to preserve their collateral and avoid the looming foreclosure by Harris County.

32. In sum, an appointment of a receiver in this case is proper as it will protect and improve the quality of the Property, while at the same time transform the Property from a debt-generating conduit into an income-generating conduit.

***Unique's Consent to Appointment of a Receiver***

33. Importantly, Unique expressly consented to the appointment of a receiver. The Deed of Trust executed by Unique expressly provides for the appointment of a receiver in the event of a default. Specifically, the Deed of Trust provides:

> **3.03 Receiver.** If an Event of Default shall have occurred, the Beneficiary, to the extent permitted by law and without regard to the value or occupant of the security, shall be entitled to apply for the appointment of a receiver of the rents and profit of the Property without notice, and shall be entitled to the appointment of such a receiver as a matter of right . . . .
> Ex. 2 § 3.03.

34. By executing the Loan Documents, Unique has expressly consented to the appointment of a receiver, and has expressly agreed not to oppose the appointment of a receiver. *See Riverside Props. V. Teachers Ins. & Annuity Ass'n of America*, 590 S.W.2d 736, 738 (Tex. Civ. App.—Houston [14th Dist.] 1979, no writ) (provisions in deed of trust and security agreements calling for appointment of a receiver pending foreclosure were adequate for trail court order appointment of receiver); *see also Berk & Berk*, 767 F.Supp at 597 (contractual right to appointment of a receiver supports court's appointment of a receiver).

35. An appointment of a receiver to manage and operate the Property is just and necessary because: (1) statutory grounds exist for the appointment of a receiver; (2) Unique has consented to the appointment of a receiver in this matter; and (3) equitable grounds exist for the appointment of a receiver. Defendants' prefer (and Unique has agreed) that such right of possession be vested in a receiver who is qualified and experienced to possess and operate the Property. Doing so will permit Defendants to provide the money necessary, in Defendants' reasonable and good faith discretion, to address the critical needs affecting the Property.

*Proposed Relief*

36. Defendants specifically pray that:

    a. Gregory Gilfoil of CSG Properties LLC, a property management organization, who is not a party, attorney for a party or other person interested in this action, be appointed to act and serve as receiver ("Receiver") with respect to the Property, with respect to income (of any kind) therefrom, whether now existing or hereafter collected, and with respect to any and all other property and property interests pledged or assigned to Defendants under the Loan Documents on which Defendants hold a lien under the Loan Documents or in which Defendants otherwise have an interest under the Loan Documents;

    b. Receiver be allowed to take and have complete and exclusive control and possession of the Property, together with any and all bank accounts, credit card receipts, demand deposits, reimbursement rights, bank deposits, security deposits and all other forms of accounts, accounts receivable, payment rights, cash and cash equivalents, along with any and all information necessary to operate the Property, including but not limited to all security codes, combinations, passwords

and other access codes and all other collateral securing the indebtedness owed to Defendants, and to issue demands for the freezing and turnover of funds upon any financial institution or utility company which the Receiver has determined is a depository of funds belonging to, or arising from, the receivership estate, whether such accounts be titled in the name of Unique or not. A constructive trust is hereby imposed on all proceeds, funds, and/or properties of Unique due to the Plaintiff's breach of their fiduciary duties; all banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, of the Plaintiff that receive actual notice of this Order by personal service, facsimile transmission or otherwise shall:

    i.    Not liquidate, transfer, sell, convey or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Defendant except upon instructions from the Receiver;

    ii.    Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

    iii.    Within five (5) business days of receipt of that notice, file with the Court and serve on the Receiver and counsel for the Plaintiff a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and,

    iv.    Cooperate expeditiously in providing information and transferring funds, assets and accounts to the Receiver or at the direction of the Receiver;

c. Unique and all persons acting under its direction (including any remaining property managers) be ordered to deliver possession to the Property to the Receiver, including all property related information and computer files, without any right of offset or recoupment, along with all other collateral securing indebtedness owed to Defendants, including but not limited to (i) cash collateral (whether consisting of cash on hand, cash in any and all bank accounts or other accounts, all rights to security deposits, including but not limited to amounts that Borrower may have deposited with utility companies and all other cash and cash equivalents); (ii) all keys; (iii) all loans and communications and correspondence files related thereto; (iv) security deposits, rent, prepaid rent or other sums relating to the use, enjoyment, possession, improvement or occupancy of all or any part of the Property and any accounts of any of the foregoing; (v) a current list of the occupants of the Property, including data with respect to each occupant; (vi) any and all accounts receivable and accounts payable reports; (vii) any and all contracts in effect with respect to the Property and all communications pertinent thereto; (viii) any and all contracts, bids or other materials relating to any contract or work at the Property; (ix) any and all payroll records, employee files, applications and other materials relevant to those persons employed at the Property; (x) any and all insurance policies and certificates covering the Property and all communications and correspondence pertinent thereto; (xi) any and all

Case No. 4:18-cv-04542; *Unique Development Group, LLC v. Normandy Capital Trust, et al*
*Defendants' Counterclaim and Application for Appointment of Receiver*

TX-18-69436-DL
Page 12 of 18

bank statements relating to any accounts associated with the Property; and (xii) any and all references pertaining to the management of the Property;

d. Unique and any person acting under Unique's direction (including any property manager) be: (i) directed to deliver the Property to Receiver; (ii) enjoined from in any way disturbing the possession of the Property or other property that is subject of the Court's Order; (iii) prohibited and restrained from disposing of, dissipating, mishandling or misappropriating any of the Property or other such property; (iv) prohibited from taking any actions that would directly or indirectly have an adverse impact on the value of the Property; (v) prohibited and restrained from canceling, reducing or modifying any and all insurance coverage in existence with respect from the Property; and (vi) prohibited and restrained from collecting any rents or other sums due to Unique, all until further order of the Court;

e. Effective immediately, Receiver be ordered to take any and all actions Receiver deems reasonable and appropriate to prevent waste to the Property and to preserve, secure, manage, maintain and safeguard the Property and all forms of property to which Receiver is entitled to take possession and control under the Court's order; and Receiver is authorized to change door locks to the premises described above. The Receiver shall have exclusive control of the keys. The Plaintiff, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership;

f. Receiver be vested with the books and records of Unique with respect to operation of the Property and of the property subject to the Court's Order, including any and all information related to: (i) rent rolls, and leases affecting the Property; (ii) amounts paid by lessees and other obligors of Unique; (iii) liens, encumbrances and other interests against or affecting the Property; (iv) property taxes owed by Unique; (v) all types of insurance affecting the Property (vi) plans, specifications, surveys and drawings of the Property; (vii) access codes to any portion of the Property; (viii) all operating and bank statements of Unique; and (ix) all other aspects of the Property;

g. Receiver be authorized to continue to manage, operate, lease and market for lease the Property and to employ such managers, agents, employees, servants, accountants and attorneys as may in his/her judgment be advisable or necessary in the management, conduct, control or custody of the affairs of Unique and its assets; be authorized to make payments and disbursements in the ordinary course of business and to make such payments and disbursements as may be necessary and proper for the preservation of the Property and other property of Unique and be authorized to pay net income from the Property to Defendants, in reduction of the indebtedness owed to Defendants by Unique;

h. Receiver be authorized, with approval of the Court and Defendants, to have the right to market for sale and to sell the Property and other collateral or facilitate an

       assumption of the Loan and execute on Unique's behalf any necessary documents in connection with any such sale or assumption;

i. Receiver be authorized to receive and collect any and all sums due or owing to Unique in any manner relating to the Property, whether the same are now due or shall hereafter become due and owing, to deposit such sums into an account established and maintained by Receiver, and to expend such sums on the operation and management of the Property in the ordinary course of business;

j. Receiver be authorized to institute, prosecute, defend, compromise and/or intervene in or become a party to such actions or proceedings in state or federal courts necessary for the protection, maintenance and preservation of the assets of Unique and to carry out the terms of the Court's Order appointing receiver, including but not limited to, the collection of rents and other amounts now or hereafter becoming due, removal of tenants or other persons from the Property and/or the defense of any action brought against Receiver acting in such capacity;

k. Receiver be authorized to maintain appropriate property insurance for the Property, public liability insurance, workers' compensation insurance, fire and extended coverage insurance, burglary and theft insurance and other types of insurance normally obtained in connection with the operation and management of properties similar to the Property; and be authorized to continue any current policies in place and to purchase further insurance as Receiver deems appropriate;

l. Receiver be authorized to pay all current and past due real estate taxes, personal property taxes and any other taxes and assessments against the Property;

m. Receiver be authorized to prepare and file tax returns with respect to the Property, and other property subject thereto, as may be required by law, and provided, however, Receiver is not responsible for the preparation of tax returns for Unique or any of its affiliates;

n. Receiver and Defendants be authorized to enter into further lending transactions by which Defendants may lend monies to Receiver (on a nonrecourse basis as to Receiver) to enable Receiver to perform his or her duties hereunder, which shall be secured by a first and prior lien in security interest on the Property and on all other collateral of Defendants, in favor of Defendants as security for such on the same terms and conditions set forth in the Deed of Trust;

o. Receiver be authorized to: (i) negotiate and enter into new leases, occupancy agreements and contracts in the ordinary course of business of the Property; (ii) modify existing leases, occupancy agreements and contracts in the ordinary course of business of the Property; (iii) pay all utilities, expenses and other obligations secured by the Property or which may give rise to liens on the Property, and all other outstanding obligations to suppliers and service providers in the ordinary course of business, including obligations incurred prior to the commencement of the receivership, so long as Receiver has determined that it is

    prudent to do so in order to maintain business relationships that are beneficial to the conduct of the receivership in receiver's sole discretion; (iv) make repairs necessary to the maintenance of the Property in order to preserve the Property in the ordinary course of business up to the amount of $10,000 without first obtaining Lender's approval; and (v) comply with the requirements and regulations that are applicable to the Property;

p. Receiver be permitted to apply income from the Property, subject to the lien rights of Plaintiff as follows: (i) Receiver's proposed management fees in the amount of 5% of gross collections or $180.00 for each individual unit per month, whichever amount is greater, associated with the managerial services provided in connection with the receivership; (ii) the current operating expenses of the receivership in the ordinary course of business; (iii) the obligations owed to Defendants under the Loan Documents; and (iv) such other obligations incurred;

q. Receiver will be permitted to maintain sufficient cash on hand to enable Receiver to meet those expenses provided that at no time shall the Receiver maintain greater than $10,000 cash on hand for such purposes;

r. Receiver be permitted to maintain a bank account at a federally insured institution (in the name of the Receiver or the Management Company for the benefit of the Receiver), in which shall be deposited all proceeds received by the Receiver, and from which the Receiver shall pay the expenses authorized to be incurred under this Order;

s. The receivership estate, Receiver and all employees, agents, attorneys, professionals, and management companies he hires, and the employees thereof, shall have no liability for any obligations or debts incurred by Plaintiff. The liability of the Receiver is and shall be limited to the assets of the receivership, and the Receiver shall not be personally liable for any actions taken pursuant to this Order whatsoever pursuant to the Barton Doctrine. *See Barton v. Barbour*, 104 U.S. 126 (1881). The Receiver, and his agents, acting within scope of such agency ("Retained Personnel") are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel. This Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

t. ; and,

u. The authority granted to Receiver be self-executing.

Case No. 4:18-cv-04542; *Unique Development Group, LLC v. Normandy Capital Trust, et al*  
*Defendants' Counterclaim and Application for Appointment of Receiver*

TX-18-69436-DL  
Page 15 of 18

37. Defendants' request for the appointment is made without prejudice to Defendants' existing right to exercise a foreclosure, whether nonjudicial or judicial, or any of its other remedies as provided for by the Loan Documents.

### REQUEST FOR WAIVER OF APPLICANT'S BOND AND RECEIVER'S BOND

38. Plaintiff requests that the Court waive or, in the alternative, set its applicant's bond and receiver's bond in nominal amounts, because it is highly unlikely that the appointment of a receiver could be determined later to be wrongful. This is so because the parties expressly contracted for this remedy. *See* Ex. 2 § 3.03.

39. Further, Defendants are entitled to the appointment of a receiver as the mortgagee because the Plaintiff has defaulted on its obligations under the terms of the Loan Documents.

40. In addition, the applicant's bond and receiver's bond are intended to cover damages to the Property by the receiver's wrongful appointment. Since Unique has contractually consented to the receiver and has defaulted, Unique will have difficulty proving any damages by the receiver's appointment.

41. Since the likelihood of overturning the appointment of a receiver is highly unlikely, Defendants request that this Court waive the applicant's bond and receiver's bond, or in the alternative, set the bonds at nominal amounts.

### CONDITIONS PRECEDENT

42. All conditions precedent to Defendants' claims for relief have been performed or have occurred.

### ATTORNEYS' FEES

43. Defendants have retained McCarthy & Holthus, LLP and agreed to pay its reasonable fees and costs incurred relative to this proceeding and the Loan pursuant to the Loan Documents and Texas law.

## **PRAYER**

44. WHEREFORE, Normandy Capital Trust and Cohen Financial pray that:

   a. Gregory Gilfoil of CSG Properties LLC be appointed Receiver pursuant to Federal Rule of Civil Procedure 66 and be vested with all necessary authority to act on behalf of Unique and access and administer all funds and accounts at all banks and other financial institutions owned or controlled by Unique with regard to the Property, and that upon entry of an order appointing a receiver, all business activities of Unique related to the Property be conducted under the direction and approval of the Receiver as specifically requested herein;

   b. Defendants have and recover judgment against Unique for the outstanding amounts owing under the Loan Documents, together with interest to the extent allowed by applicable law, and its reasonable and necessary attorneys' fees and all costs of court;

   c. The Court issue an order allowing Defendants to foreclose on the Property, whether by selling the individual units separately, as a single combined lot, or any combination thereof, in accordance with the Loan Document and Texas Property Code § 51.002, or strictly in the alternative, through a judgment for judicial foreclosure instructing a marshal, constable, or sheriff to seize and sell the Property in satisfaction of the judgment, and a declaration of Defendants' right to the same;

   d. That the Court enter a judgment declaring that upon the completed foreclosure of the Deed of Trust, any interest Unique may have in the Property will have been foreclosed and extinguished; and,

Case No. 4:18-cv-04542; *Unique Development Group, LLC v. Normandy Capital Trust, et al*
*Defendants' Counterclaim and Application for Appointment of Receiver*

TX-18-69436-DL
Page 17 of 18

e.  Defendants be awarded such other and further relief, both general and special, at law and in equity, to which Defendants may be justly entitled.

>Respectfully Submitted,
>**MCCARTHY & HOLTHUS, LLP**
>
>*/s/ Brandon Hakari*
>Brandon Hakari / TBN: 24107552
>Cole Patton / TBN: 24037247
>1255 West 15th Street, Suite 1060
>Plano, TX  75075
>Phone: 214.291.3800
>Fax: 214.291.3801
>bhakari@mccarthyholthus.com
>
>**ATTORNEYS FOR DEFENDANTS**
>**NORMANDY CAPITAL TRUST AND**
>**COHEN FINANCIAL**

## CERTIFICATE OF SERVICE

I hereby certify that I submitted the foregoing to the clerk of the United States District Court, Southern District of Texas using the electronic case filing system of the Court, and that I served all counsel of record listed below in accordance with Federal Rule of Civil Procedure 5(b)(2) on September 29, 2020.

William B. Underwood, III
**UNDERWOOD * JONES * SCHERRER, PLLC**
5177 Richmond Avenue, Suite 505
Houston, Texas 77056
**COUNSEL FOR PLAINTIFF**

   *via CM/ECF*

>*/s/ Brandon Hakari*
>Brandon Hakari

Case No. 4:18-cv-04542; *Unique Development Group, LLC v. Normandy Capital Trust, et al*
*Defendants' Counterclaim and Application for Appointment of Receiver*

TX-18-69436-DL
Page 18 of 18