United States District Court
Southern District of Texas
**ENTERED**
March 17, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNIQUE DEVELOPMENT GROUP, LLC,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | **CIVIL ACTION 4:18-cv-04542** |
| | § | |
| **NORMANDY CAPITAL TRUST AND** | § | |
| **COHEN FINANCIAL,** | § | |
| | § | |
| *Defendants*. | § | |

## SUMMARY JUDGMENT OPINION

This matter is before the Court on Defendants' Motion for Summary Judgment.[1] ECF 49. Plaintiff did not file a timely response. Having considered Defendants' submissions and the law, the Court GRANTS the motion.

### I.    Background

On July 20, 2017, Plaintiff executed a Promissory Note in the amount of $3,150,000.00 secured by a Deed of Trust on the subject Property (the Note and Deed of Trust will be referred to collectively as the Loan).[2]  ECF 49-1 at Exs. 1-1, 1-2.  Defendant Normandy Capital Trust is the current owner and holder of the Note and mortgagee of the Deed of Trust.  *Id.* at Ex. 1-3.  Defendant

---

[1] The parties consented to proceed before "a United States Magistrate Judge" for all purposes, including final judgment. ECF 9, 10.  The District Court initially transferred the case to United States Magistrate Judge Nancy Johnson.  ECF 12. Upon Judge Johnson's retirement, the case was transferred to United States Magistrate Judge Christina Bryan. ECF 37.  The Fifth Circuit affirmed the magistrate judge's jurisdiction under substantially identical facts in *Hester v. Graham, Bright & Smith, P.C.*, 289 F. App'x 35, 40 (5th Cir. 2008).  The Fifth Circuit in *Hester* distinguished *Mendes Junior Int'l Co. v. M/V Sokai Maru*, 978 F.2d 920 (1992), a case in which the magistrate judge lacked jurisdiction because the initial consent was to a specific, named magistrate judge and the case was never transferred to the new magistrate judge who ultimately entered a final judgment in the case.  Furthermore, the Fifth Circuit's recent decision in *PNC Bank, Nat'l Ass'n v. Ruiz*, No. 20-50255, 2021 WL 788402, at *3 (5th Cir. Mar. 2, 2021) is dissimilar to this case and does not demonstrate a lack of jurisdiction by the magistrate judge.  In *Ruiz*, the Fifth Circuit held the magistrate judge lacked jurisdiction over the case because, while no party objected to the entry of a final order by the magistrate judge, one party had previously refused to consent.  The *Ruiz* decision discussed the Supreme Court's holding in *Roell v. Withworth*, 538 U.S. 580 (2003)— that consent to a magistrate judge's jurisdiction can be implied—but held that implied consent could not overcome a prior refusal to consent.  In this case, all parties consented to the jurisdiction of "a United States Magistrate Judge" and have never objected to the reassignment of this case to Magistrate Judge Christina Bryan.  Therefore, the Court finds it has jurisdiction to hear and enter final judgment in this case.

[2] The Property is defined as 1842 Colquitt Street, Houston, TX 77098; 1844 Colquitt Street, Houston, TX 77098; 1846 Colquitt Street, Houston, TX 77098; 1848 Colquitt Street, Houston, TX 77098; 4112 Driscoll Street, Houston, TX 77098; 4114 Driscoll Street, Houston, TX 77098; 4116 Driscoll Street, Houston, TX 77098; 4118 Driscoll Street, Houston, TX 77098; and, 4120 Driscoll Street, Houston, TX 77098.

Cohen Financial (now known as Situs Asset Management LLC) is the mortgage servicer on the Loan. ECF 49-1 at 1.  Plaintiff does not dispute that the Loan is in default because it has not paid all payments due and has failed to pay property taxes for 2018-2020.

In Fall 2018 the parties negotiated in an effort to reinstate the Loan and prevent foreclosure. *See* ECF 49-2.  When negotiations failed to result in reinstatement, Plaintiff sued Defendants in state court on November 2, 2018 and obtained a Temporary Restraining Order halting the noticed November 6, 2018 foreclosure sale.  ECF 1-1 at 57-58.  Defendants removed the case to federal court on the basis of diversity jurisdiction.  ECF 1.  Plaintiff's Second Amended Complaint asserts claims against Defendants for fraud and breach of the terms of a loan reinstatement and extension agreement Plaintiff contends the parties negotiated and agreed upon in Fall 2018.  ECF 22.  Upon Defendants' motion and without response from Plaintiff, on December 31, 2020 the Court appointed a receiver to oversee the Property, which is in disrepair and has been unoccupied for approximately two years. ECF 48.  Defendants filed a Motion for Summary Judgment on all claims on January 22, 2021.  ECF 49.  Plaintiff failed to file a response to Defendants' Motion for Summary Judgment.

## II.      Summary Judgment Standards

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001).  If the party moving for summary judgment bears the burden of proof on an issue he must "establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  If a moving party who does not bear the burden of proof meets its initial burden, the nonmoving party must go beyond the pleadings and must present evidence such as affidavits, depositions, answers to interrogatories, and admissions on file to show "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 324 (1986).  A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party.  *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016).  "An issue is material if its resolution could affect the outcome of the action."  *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002).

The court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor.  *R.L. Inv. Prop., LLC v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013).  In ruling on a motion for summary judgment the Court does not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."  *Honore v. Douglas,* 833 F.2d 565, 567 (5th Cir. 1987).  However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (quoting *Celotex*, 477 U.S. at 325).

### III.    Analysis

Federal courts exercising diversity jurisdiction apply state substantive law to state law causes of action such as breach of contract and fraud.  *Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999).  To determine which state's substantive law applies, the Court follows the choice of law rules of the forum state.  *Mitchell v. Lone Star Ammunition, Inc*., 913 F.2d 242, 249 (5th Cir. 1990).  "In Texas, contractual choice-of-law provisions are typically enforced."  *Smith v. EMC Corp*., 393 F.3d 590, 597 (5th Cir. 2004).  The Note and Deed of Trust in this case provide that, except as to foreclosure procedures, they are to be governed and construed in accordance with New York law.  ECF 49-1, Exs. 1-1, ¶12; 1-2 ¶4.06.

Plaintiff's claims in this case involve a breach of contract and fraud claim relating to the negotiation of a failed reinstatement and extension of the Loan.  ECF 49 at 2.  Defendants argue that the parties' choice of law provisions in the Note and Deed of Trust apply in this case "given that Plaintiff's fraud claim arises from their interpretation of the [extension] agreement and the potential

modification of the Note and Deed of Trust." ECF 49 at 11. A choice of law provision does not always apply to every dispute between contracting parties. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir.), opinion modified on denial of reh'g, 355 F.3d 356 (5th Cir. 2003). However, Plaintiff has failed to object to Defendants' assertion that New York law governs all claims in this case. Because the breach of contract claim in this case arises from the attempt to renegotiate or modify the Note and Deed of Trust, documents which the parties agreed would be governed by New York law, the Court will apply New York law to the breach of contract claim. Because the application of New York and Texas law yields the same result with respect to the motion on the fraud claim, the Court declines to rule definitively as to which law governs that claim.

### A. Defendants are Entitled to Summary Judgment on Plaintiff's Breach of Contract Claim.

The elements of a breach of contract claim under New York law are: (1) the existence of a contract; (2) the plaintiff's performance under the contract; (3) the defendant's breach of that contract; and (4) resulting damages. *JP Morgan Chase v. J.H. Elec. Of N.Y., Inc.*, 69 A.D.3d 802, 803 (N.Y. App. Div. 2010). Plaintiff alleges that Defendants breached a contract for the reinstatement and extension of the Loan by unilaterally changing the terms of the agreement after it had made a $100,000.00 payment. ECF 22, ¶ 17. Defendants contend there was never a meeting of the minds on the terms of reinstatement and extension and Plaintiff has not suffered damages a result of the alleged breach of a contract for reinstatement.

The summary judgment evidence shows that on September 12, 2018 Plaintiff, through its attorney Bill Underwood, contacted Darren Weaver, a representative of Defendants, to "determine the status of [the Loan]." ECF 49-2 at 4 (Ex. 2-1). Weaver provided Underwood with a statement showing the Loan status as of August 31, 2018. *Id.* at 11, 163 (Exs. 2-3; 2-43). Underwood contacted Weaver a few days later confirming he was authorized to negotiate a resolution for Plaintiff and stating the numbers previously provided needed to be updated. *Id.* at 14 (Ex. 2-4).

On September 25, 2018, Weaver provided in an email "an itemization of the reinstatement

amount due to cure the loan[.]" The reinstatement amount included interest, default interest, insurance, and various fees, with a total amount of $459,172.15.  *Id.* at 16 (Ex. 2-6). Within ten minutes, Weaver sent another email stating there would also be a "1% extension fee for 3 months as discussed." *Id.* at 16-17 (Exs. 2-6, 2-7).  On September 26, 2018 Underwood responded:  "I can confirm that they are in a position to pay the reinstatement amounts." *Id.* at 20 (Ex. 2-9).  On October 2, Weaver informed Underwood on that because the reinstatement "has not happened . . . Notice of Sale will be filed by Thursday." *Id.* at 26 (Ex. 2-11).

Over the next two weeks the parties exchanged several requests for status updates.  *See id.* at 30-68 (Exs. 2-12 – 2-23).  On October 16, 2018 Cohen Financial sent Underwood, via email attachment, a statement with figures updated since Weaver's September 25 email that would be effective through October 31, 2018.  The statement itemized the various amounts owed by Plaintiff, including interest, default interest, late fees and a Special Servicing Fee.  *Id.* at 62, 164 (Exs. 2-21, 2-44).  Following Underwood's receipt of the updated statement, Weaver sent him a brief email stating that "DI [Default Insurance], Exit Fee, Revaluation fee, are not applicable at this time for reinstatement all others are[.] The loan is past maturity.  Typically there is an extension fee but [we] are flexible here to get this reinstated." *Id.* at 67 (Ex. 2-23).  The Court's review of the October 16 statement sent to Underwood by Cohen Financial reveals a total reinstatement amount of $527,891.77.  If the amounts identified for Default Insurance, Exit Fee, and Revaluation Fee are deducted, the total reinstatement fee changes to $389, 866.77, which is the amount Plaintiff alleges the parties agreed upon.

On October 18, 2018 Underwood informed Weaver that Plaintiff was prepared to "pay $100,000 tomorrow and the balance by the end of next week. …Can we reach an agreement based upon this?" *Id.* at 69 (Ex. 2-24).  Weaver responded ". . . *if all the reinstatement funds are received as evidenced in the payoff letter sent yesterday* [the October 16 statement from Cohen Financial]— the loan would be considered in good standing. . . . we will need to complete a simple extension of

term in order to post 100% of the funds. . . . The sale will remain on the calendar for 11/6 until *full reinstatement funds* are received." *Id.* at 71 (Ex. 2-25) (emphasis added).  Weaver sent a draft of the extension agreement the same day, noting that the provisions for default acknowledgment and forbearance that included the ability to "reassess default economics" "should be a fair trade off for waiving all the DI for reinstatement."  *Id.* at 77, 165 (Exs. 2-27, 2-45).  Later in the evening of October 18, Underwood emailed Weaver asking him to confirm that the $100,000 would be credited "toward the amount required for reinstatement *set forth in the letter of October 16, 2018 from Cohen Financial*, and that when the balance for reinstatement is paid, the parties will enter into the extension." *Id.* at 116 (Ex. 2-32) (emphasis added).  On October 19, 2018 Weaver responded that the $100,000 "will be used to be placed against the full reinstatement balance.  Upon receipt of the remaining balance, and then completed extension, the loan would then be reinstated."  ECF 22-4.[3] The October 19, 2018 email does not mention deduction of default interest from "the full reinstatement balance."  Plaintiff wired $100,000 to Cohen Financial on October 19, 2018.  *Id.* at 127 (Ex. 2-34).

For the next several days discussions ensued regarding a new maturity date for the Loan in the Extension Agreement, and the need to file an insurance claim for water damage.  *Id.*  at 90-139, 168 (Exs. 2-29 – 2-36, 2-46).  On October 23, 2018 Weaver emailed Underwood to inquire about the remainder of the reinstatement funds and remined him that the full reinstatement would need to be completed before the foreclosure sale date could be cancelled.  *Id.* at 136 (Ex. 2-36).

Early on the morning of October 26, 2018 Weaver expressed concern about insurance issues and told Underwood it would be best to discuss the reinstatement progress over the phone given the upcoming sale date.  *Id.* at 144 (Ex. 2-39).  Weaver also stated in the email that for transparency's sake, he wanted to reiterate the remaining reinstatement balance, referencing the attached October

---

[3] This email is referenced in Defendants' brief as Ex. 2-33.  This exhibit is missing from the attachments to the Motion for Summary Judgment, ECF 49-2, which skip from 2-32 to 2-34, but it is attached as Exhibit 4 to Plaintiff's First Amended Complaint.

16 statement.  *Id.* at 144 (Ex. 2-39).   Underwood responded, requesting confirmation "that the reinstatement number attached does not include the DI, exit fee, and Reval fee, so that the balance due after credit of the $100k, is approximately $290k."   *Id.* at 147 (Ex. 2-40).   Weaver responded with an email stating "[p]lease call when you can to discuss." *Id.* at 157 (Ex. 2-42).   A few hours later, Underwood sent another email stating "[t]he full $290,000 is available to be transferred now. *If* we can proceed as originally agreed, ie, without the additional confession of judgment on the DI, [I] will tell them to proceed now.   *Please confirm* as soon as possible."   *Id.* at 157 (Ex. 2-42) (emphasis added).

Although not included in Defendants' summary judgment evidence, Plaintiff attached as Exhibit 8 to its First Amended Complaint an October 31, 2018 email from Weaver to Underwood "reattaching" the October 16 statement from Cohen Financial and stating that the "amounts in the payoff letter needing to be paid in order to reinstate the loan include regular interest, default interest, delinquent taxes, late fees, FP insurance premiums, and special servicing fees."  ECF 22-8.  In the October 31 email Weaver also offers to lower the default interest rate being charged from 26% to 18% in exchange for confession of judgment and waiver of defenses.  He then states:  "Absent such a compromise, we can accept the full amount of funds required for reinstatement as calculated per the terms of the promissory note."  ECF 22-8.  There is no evidence in the record that Plaintiff submitted any of the remaining balance beyond the initial $100,000.00.

Based on the above information, the Court finds the parties never reached agreement on the reinstatement amount.  The summary judgment evidence demonstrates that although Weaver told Underwood on October 16 (the same day Cohen Financial sent Underwood a statement with figures updated since the initial August statement), that the amounts for Default Insurance, Exit Fee, and Revaluation Fee were not applicable, when Underwood inquired on October 18 whether the parties "*could* reach an agreement based on this" Weaver responded that "*if all* the reinstatement funds are received as evidenced in the payoff letter [October 16 statement] the loan would be in good standing."

ECF 49-2 at 69, 71 (Ex. 2-24, 2-25 (emphasis added)).  Again, the Court's review of October 16 statement, resent to Plaintiff on October 31, indicates that the enumerated fees result in a total reinstatement amount of $527,891.77.  Thus, nothing in the record shows the parties reached a final agreement on a reinstatement amount of approximately $390,000.00 as alleged by Plaintiff.

The lack of final agreement is clear from various emails.   On October 26 Underwood emails Weaver "to confirm" that the reinstatement amount will not include the amounts for Default Insurance, Exit Fee and Revaluation Fee as set forth in the October 16 statement.  *Id.* at 147 (Ex. 2-40).  Later that same day Underwood asks Weaver "if we can proceed as originally agreed without the additional confession of judgment on the DI. . . " and to "[p]lease confirm as soon as possible." *Id.* at 157 (Ex. 2-42).  However, nothing in the record shows that Weaver confirmed the reinstatement amount would not include default insurance in response to Underwood's October 26 request.  To the contrary, Weaver responded on October 31 that the "amounts in the payoff letter needing to be paid in order to reinstate the loan include regular interest, default interest, delinquent taxes, late fees, FP insurance premiums, and special servicing fees." ECF 22-8.  In addition, Defendant clearly informed Plaintiff on October 18 that an extension agreement was a necessary part of the reinstatement, but no extension agreement was ever executed.  *Id.* at 71, 165-70 (Exs. 2-25; 2-45, 2-46).

"To form a binding contract there must be a meeting of the minds, such that there is a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Stonehill Capital Mgmt., LLC v. Bank of the W.*, 28 N.Y.3d 439, 448, 68 N.E.3d 683, 689 (N.Y. 2016).  The record shows there was no meeting of the minds on the amount required to reinstate the Loan—an essential term any reinstatement agreement.  Because Plaintiff has failed to present summary judgment evidence demonstrating a fact issue on whether a contract was formed, Defendant is entitled to summary judgment on Plaintiff's breach of contract claim.[4]

---

[4] Defendants also argue Plaintiff cannot show that it was damaged by Defendants' breach of or failure to abide by the alleged reinstatement and extension agreement.  The Court declines to grant summary judgment on the breach of contract

**B.  Defendants are Entitled to Summary Judgment on Plaintiff's Fraud Claim.**

In order to prove fraud under New York or Texas law, Plaintiff must prove: "(1) the defendant made a false representation of fact, (2) the defendant had knowledge of the falsity, (3) the misrepresentation was made in order to induce the plaintiff's reliance, (4) there was justifiable reliance on the part of the plaintiff, and (5) the plaintiff was injured by the reliance." *Fulton v. Hankin & Mazel, PLLC*, 132 A.D.3d 806, 807 (N.Y. App. Div. 2015); *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 198 (5th Cir. 2016) (listing 5 elements of fraud under Texas law).  In this case, Plaintiff alleges that Weaver, on behalf of Defendants, fraudulently represented that Defendants would reinstate the Loan if Plaintiff paid approximately $390,000.00 (the reinstatement amount of $527,891.77 minus the charges for Default Insurance, Exit Fee and Revaluation Fee), and that Defendants never had any intent to comply with that representation.  ECF 22, ¶13.

Plaintiff has failed to create a fact issue on at least three elements of its fraud claim:  (1) the existence of a false representation of material fact, (2) made with knowledge the fact is false; and (3) justifiable reliance.  *Fulton*, 132 A.D.3d at 807; *Johnson*, 830 F.3d at 198.  First, the record, set forth in detail above, does not show that Weaver expressly represented "that Normandy would reinstate the loan and waive the default interest and reinstatement fees upon receipt of payments totaling $390,000."  ECF 22, ¶13.  Weaver did represent on October 16, 2018 that default interest was "not applicable at this time," but he also noted that the issue of an extension fee was still to be negotiated, and he did not provide a new total reinstatement amount.  ECF 49-2 at 67 (Ex. 2-23).  In addition, his representation was made in the context of ongoing negotiations that never culminated in a final agreement and were modified by subsequent communications in the negotiation.  For example, on October 18, 2018 Weaver informed Underwood that ". . . if *all* the reinstatement funds are received as evidenced in the payoff letter sent yesterday [the October 16, 2018 statement of amounts due] the loan would be considered in good standing." *Id.* at 71 (Ex. 2-25) (emphasis added).  The October 16,

---

claim based on Plaintiff's failure to present evidence of damages because Defendants' other arguments are dispositive.

2018 statement included amounts for default interest and Weaver's October 18, 2018 email did not represent that default interest or any other amounts would be waived. *Id.* at 164 (Ex. 2-44). Second, Plaintiff has presented no evidence showing that Weaver knew his statements to be false the time he made them.

Third, Plaintiff cannot meet its burden to demonstrate the element of justifiable reliance. The series of back and forth emails establishes that at the time Plaintiff wired the $100,000 on October 19, 2018 negotiations were ongoing and Plaintiff had no confirmation from Defendants that the total payment needed for reinstatement would be $389,866.77, or approximately $390,000. Plaintiff also knew that an Extension Agreement, the terms of which were yet to be finalized, would also be required in order to reinstate the loan. The draft Extension Agreement provided to Plaintiff clearly set forth that Plaintiff was obligated for "default interest, late charges, taxes, insurance, legal fees, revaluation fees, servicer fees, and all other fees that have accrued from August 1st, 2018." ECF 49-2 at 165-70 (Ex. 2-45, 2-46). Therefore, Plaintiff could not have justifiably relied on any representation by Weaver as to the final reinstatement payment amount in deciding to forward $100,000 to be credited towards reinstatement. *See DDJ Mgt., LLC v. Rhone Group L.L.C.*, 15 N.Y.3d 147, 153-54 (2010) (there is no justifiable reliance where the plaintiff "has the means available to know, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation," but fails to "make use of those means."); *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 655 (Tex. 2018) (there can be no justifiable reliance on a misrepresentation if "red flags" indicate reliance is unwarranted).

In sum, Defendants are entitled to summary judgment on Plaintiff's fraud claim because the record and the summary judgment evidence demonstrate an absence of a fact issue on three separate elements of its fraud claim.[5]

---

[5] Defendant also argues that Plaintiff has suffered no damages and that fraud claim fails under New York law because it is based on the same facts as the breach of contract. *Egan v. New York Care Plus Ins. Co.*, 277 A.D.2d 652, 653 (N.Y. App. Div. 2000) ("It is axiomatic that a cause of action for fraud does not arise where … the fraud alleged relates to a breach of contract."). The Court need not reach these arguments.

**IV.     Conclusion and Order**

For the reasons stated above, Defendants' Motion for Summary Judgment, ECF 49, is GRANTED and Plaintiff's claims in this case are DISMISSED with prejudice.


Signed on March 17, 2021, at Houston, Texas.


Christina A. Bryan
United States Magistrate Judge